## HARRIS TOURIST BED CO. et al. v. WHITBECK.

No. 19825. Opinion Filed Dec. 9, 1930.

Rehearing Denied Jan. 12, 1931.

A. E. Pearson and Hal Houston, for plaintiffs in error.

T. G. Chambers, Jr., and Ben C. Arnold, for defendant in error.

DIFFENDAFFER, C. The parties hereto will be referred to herein as plaintiff and defendants, as in the trial court.

Plaintiff commenced this action in the district court to recover the sum of $502.20, alleged to be due and owing to him for services rendered the defendant corporation as a balance for five months' salary at $150 per month. The time within which he alleges said services to have been rendered was from January 15 to June 15, 1926. As to defendant Dickson, he alleges a separate contract in writing whereby defendant Dickson agreed to pay this, with all other indebtedness of the company, not exceeding, however, $17,500, and further alleged all the indebtedness of said company including plaintiff's claim at the time said contract was executed did not exceed said sum of $17,500. A copy of said contract, the execution of which is admitted, was attached to the petition.

Defendants answered separately. The answer of defendant corporation was, in substance, a general denial, and specifically denied that plaintiff was ever employed by the corporation, or any officer thereof, or other person authorized to act for the company at the time set out in plaintiff's petition, to wit, on or about January 15, 1926.

It then alleges that plaintiff was employed by the company about May 1, 1926, at a salary of $150 per month, with the agreement to date the commencement of his salary back to April 1, 1926; that plaintiff was the bookkeeper for said company and kept the books and records and placed said salary records on the books, crediting himself with salary from April 1, to June 15, 1926, all of which had been paid to plaintiff. I further alleged that defendant Dickson had signed the contract set out in plaintiff's petition, in which plaintiff represented that the books of the company showed all its indebtedness, and that the new officers purchased and took possession of said company upon the said statements of plaintiff, and that plaintiff was thereby estopped to claim any salary prior to April 1, 1926.

The answer of defendant Dickson was substantially the same as that of the defendant company, except that he alleges the representations as to the commencement of his salary and that the books of the company showed all its indebtedness was made to him or his agent orally, rather than by the contract.

By the contract which plaintiff, as well as defendant Dickson, signed, there is no specific statement or representation that the books of the company showed all its indebtedness, nor is there any statement or representation that plaintiff had kept the books.

Plaintiff filed no reply to these answers, but the cause went to trial before a jury, without objection, resulting in a verdict and judgment for plaintiff in the sum of $375, and defendants, after unsuccessful motion for new trial, bring this appeal.

At the trial, it seems to have been conceded that plaintiff had been paid his salary in full from April 1st, to June 15, 1926, leaving the only question in the case that of plaintiff's right to compensation for the period of time between January 15 and April 1, 1926, in the sum of $375. There is no serious contention that plaintiff did not render the services for which he claims, but it is contended that on and prior to January 15, 1926, or the date when plaintiff claims his oral contract of employment was entered into, the defendant corporation had not been organized and was without authority to employ plaintiff.

From the record, it appears that the articles of incorporation of the company were issued about December 1, 1925, and that therein no persons were designated to act as directors of the company until a meeting of the stockholders was held for that purpose. This meeting was not held until February 6, 1926.

From the record, it appears that the company was incorporated by M. W. Newman, W. A. Darby, and H. G. Jackson; that sometime in December, 1925, Newman, Darby, and Jackson advertised in the Daily Oklahoman for a bookkeeper at a salary of $150 with investment required. Plaintiff went to see them and found that, in order to secure the position, he would be required to invest $1,000; that they then told him his salary would be $150 per month; that they were in the process of organization and that plaintiff would be expected only to take orders; take people out and show the bed; demonstrate the bed; take care of the office; answer whatever correspondence that might come in, or do whatever might come up in connection with the work, and that there would be no bookkeeping at that time, and might not be any for sometime; that he accepted the proposition, and paid the $1,000; that he started to work about the 1st of January, but that the agreement was that his salary would begin on January 15th; that Darby, Newman, and Jackson were then the sole owners of the concern, though no stock had been issued; that he continued in such work until June 15th; that he had been paid his salary for the months of April and May and the first half of June, but had never been paid anything for January, February, or March. The meeting of the stockholders for organization was held February 6, 1926, at which time directors were elected and officers of the company were elected. H. E. Powell had also become interested in the company, and the officers elected were W. A. Darby, president, H. G. Jackson, vice president, and H. E. Powell, secretary-treasurer. These same men constituted the board of directors. Sometime about April 1st, a Mr. Powell went to work for the company as bookkeeper, and plaintiff never thereafter kept any books. Before that time there appears to have been but little bookkeeping to do. Plaintiff testified that, up to the time Powell came in as bookkeeper, he had kept such books, and that he had charged his salary on the books for the time in controversy. The company had become somewhat involved, and Dickson, who also appears to have become a stockholder, in order to refinance the concern, agreed by the terms of the written contract to pay all outstanding indebtedness of the company provided same did not exceed the sum of $17,500, and in return therefor was

to receive from certain stockholders an assignment of all their stock, amounting to $71,200, except that each one of them was to retain stock in par value to the amount of money paid in by them. In addition thereto, he agreed to put $25,000 in the company within 12 months. Certain other conditions, not material here, were contained in the contract, and also the following clause:

"This agreement is made, however, subject to party of the second part having the right, within 10 days from the date hereof, to have the books of said corporation audited and its records, contracts, and patent rights examined."

The contract then provided:

"If this examination and audit discloses that the present indebtedness of said corporation exceeds $17.500, * * * then this contract shall not be binding upon second party. But, on the other hand, if the indebtedness of the corporation upon an audit of its books does not exceed the amount. herein stated, * * * then this contract becomes binding upon party of the second part."

Dickson employed an auditor who audited the books of the company. The total indebtedness shown by the books appears to have been less than $17,500, and was less than that amount, including plaintiff's claim. But the books did not show plaintiff's claim. As before stated, plaintiff testified that during the time he kept the books he had made an entry therein showing his salary for the time in dispute. He testified further that the pages on which this entry had been made had been torn out by Powell, who took charge of the books and kept them after about April 1st. No witness testified that plaintiff directly stated or represented that the books showed all the indebtedness of the company, but there was evidence showing that Powell had so represented to the auditor in the presence of plaintiff, and that plaintiff did not deny the correctness of this statement nor mention his claim for salary. It is upon this evidence that defendants predicate their assignment of error of refusal of the trial court to instruct the jury on the question of estoppel.

Defendants present all their assignments under two propositions, viz.:

(1) That the contract of employment having been made before any officers of the corporation had been elected, or by-laws adopted. and before any meeting of the stockholders was held, and before any stock had been issued, this agreement was not binding on the corporation, as it was never ratified nor confirmed by the officers or directors.

(2) "Where a party pleads estoppel and introduces evidence to prove estoppel, he is entitled to have the question of estoppel presented to the jury, when there is a jury trial."

Much of defendants' brief is directed to the proposition of the invalidity of contracts entered into as was the one here involved.

The trial court took the view of the law that such contracts were invalid unless ratified or adopted by the corporation after its organization, and instructed the jury in plain terms that the contract was not binding upon the corporation unless it, after its organization, expressly or impliedly ratified or adopted the contract as its own.

The court also instructed the jury that the burden was upon plaintiff to prove the contract and its subsequent ratification by a preponderance of the evidence. So, conceding the invalidity of the contract when made, this leaves only the question of sufficiency of the evidence as to ratification. Upon this phase of the case, defendants make no argument and cite no authority.

As a rule, a corporation may adopt or ratify an agreement made originally by its promoters where the agreement is one which the corporation itself could make and one which the agents of the company have express or implied authority to make, and is not ultra vires or illegal. 14 C. J. 257-8.

In 14 C. J. 259, the following rule is stated:

"After a corporation comes into existence, it may make a contract entered into by its promoters its own either by express agreement or by ratification or adoption; and this ratification or adoption may be by express corporate action. or by any of the other modes, including corporate acts, by which corporations may ratify or adopt the unauthorized or officious acts of others made in their behalf, as where the corporation voluntarily accepts the benefits accruing to it from the engagement of its promoters, after full knowledge, and having full liberty to decline the same, in which case it is to be regarded as adopting the contract cum onere, taking the burdens thereof with the benefits."

In 7 R. C. L. p. 82, it is said:

"To render the contract of the promoters binding on the corporation, it is not necessary that its adoption should be express; it may be shown from acts or acquiescence of the corporation or its authorized agents, as any similar contract may be, and if the corporation subsequently recognizes and treats such contract as valid, this makes it,

in all respects, what it would have been if the requisite corporate power had existed when it was entered into. And, as a general rule, adoption or ratification results from the acceptance by the corporation, after its organization, of the benefits of the contract; having exercised rights and enjoyed benefits secured to it by the terms of a contract made by its promoters in its behalf, a corporation should be held estopped to deny its validity."

We have carefully examined the record and find ample evidence to support the verdict of the jury, which is, in effect, a finding that the contract was ratified or adopted by the corporation.

There was no error in refusing the instruction offered by defendants on the question of ratification, for the reason that the general instruction given by the court fully covered the question.

Defendants requested certain instructions on the second proposition, to wit, that of estoppel. But a careful examination of the record will disclose a failure of proof by defendants on this point sufficient to present the question to the jury. As heretofore pointed out, there was no evidence that plaintiff represented to defendant Dickson, or his agent, that the books of the corporation showed all the indebtedness of the corporation. The most the record does show on that point was the statement made to that effect by Powell, the bookkeeper, in the presence of plaintiff, and no denial thereof by plaintiff. But, as pointed out, the uncontradicted testimony of plaintiff was that he had entered this item in the books of the company while he kept them. There is not a suggestion in the record that plaintiff knew or had reason to know that the pages of the books showing this entry had been torn out at the time the books were turned over to the auditor and at the time the alleged statement was made in his presence. Therefore, there was no occasion, so far as the record shows, for plaintiff to assert his claim in opposition to the statement made by the bookkeeper to the auditor in plaintiff's presence that all the indebtedness of the corporation was shown by the books. So far as plaintiff appears to have known at that time, the books did not show the entry of his salary for the last half of January, and all of February and March. Without some evidence of plaintiff's knowledge of the condition of the books at that time as to this item, there was no showing of a duty resting upon plaintiff to speak and assert his claim. There was then no question of estoppel to present to the jury, and

no error in refusing an instruction on that question.

The judgment should be, and is, hereby affirmed.

BENNETT, TEEHEE, HALL, HERR, EAGLETON, LEACH, and REID, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) anno. 26 L. R. A. 48; 7 R. C. L. p. 81; R. C. L. Perm. Supp. p. 1912; R. C. L. Continuing Perm. Supp. p. 286. (3) 10 R. C. L. p. 692; R. C. L. Perm. Supp. p. 2726.